No. 22-2896

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## MICHAEL GRASSO,
*individually and trading as General Partner of GF 2014, L.P.,*

*Appellant,*

v.

## TOBY KATZ,

*Appellee.*

---

## BRIEF OF APPELLANT AND APPENDIX VOL. I (PAGES 1-19)

---

On Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania, Dated September 28, 2022, at No. 2-21-cv-05472, Granting Defendant's Motion to Dismiss.

Jordan M. Rand
Teri M. Sherman
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700

*Attorneys for Appellant*
*Michael Grasso*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant, Michael Grasso, is an individual, not a corporation.  No publicly held corporation not a party to this appeal has a financial interest in the outcome of the proceeding.

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................. 2

STATEMENT OF THE CASE ................................................................... 3

    I.    Relevant Facts ........................................................................ 3

        A.    The Parties ...................................................................... 3

        B.    The Entireties Interest and Execution Proceedings ..................... 3

        C.    The Katz Federal Court Action .......................................... 5

    II.    Procedural History ................................................................ 9

    III.    Rulings Presented for Review .................................................. 10

SUMMARY OF ARGUMENT ................................................................ 11

ARGUMENT ..................................................................................... 13

    I.    Standard of Review ............................................................... 13

    II.    Legal standards .................................................................... 14

        A.    Motion to Dismiss ............................................................ 14

        B.    Article III Standing .......................................................... 15

    III.    The District Court Erred in Dismissing the Abuse of Process Claim. 16

        A.    Michael Adequately Alleged Legal Process Used Against Him ............................................................................ 17

        B.    Michael Adequately Alleged That Such Process was Used for an Improper Purpose. .......................................... 21

        C.    Grasso Has Sustained Harm Sufficient to Confer Standing and to Satisfy the Third Element of an Abuse of Process Claim ................................................................ 26

IV.    THE DISTRICT COURT ERRED IN DISMISSING THE TORTIOUS INTERFERENCE CLAIM..............................................30

V.    THE DISTRICT COURT ERRED IN DISMISSING THE DECLARATORY JUDGMENT CLAIM...........................................36

CONCLUSION.......................................................................................38

CERTIFICATION OF BAR MEMBERSHIP ..........................................39

CERTIFICATE OF IDENTITY OF COPIES ..........................................41

CERTIFICATE OF VIRUS CHECK .......................................................42

CERTIFICATE OF SERVICE ................................................................43

10296303.v2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agron, Inc. v. Lin*,
  No. CV0305872MMM, 2004 WL 555377 (C.D. Cal. March 16, 2004) ...........22

*Al Hamilton Contracting Co. v. Cowder*,
  644 A.2d 188 (Pa. Super. Ct. 1994)....................................................................17

*Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-02434, 2008 WL 4771850 (E.D. Pa. Oct. 30, 2008)......................*Passim*

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004) .................................................................................21

*Bailets v. Pennsylvania Tpk. Comm'n*,
  181 A.3d 324 (Pa. 2018)........................................................................................25

*Bd. of Ed. of Farmingdale v. Farmingdale Classroom Tchrs. Ass'n, Inc.*,
  343 N.E.2d 278 (N.Y. 1975).......................................................................... 15-16

*Matter of Bundy*,
  53 B.R. 582 (W.D. Pa. Bankr. 1985)..............................................................18, 31

*Carney v. Adams*,
  141 S. Ct. 493 (2020)............................................................................................12

*Corbett v. Hunter*,
  436 A.2d 1036 (Pa. Super. Ct. 1981)..................................................................20

*Cruz v. Princeton Ins. Co.*,
  925 A.2d 853 (Pa. Super. Ct. 2007).............................................................*Passim*

*Cruz v. Princeton Ins. Co.*,
  972 A.2d 14 (Pa. Super. Ct. 2009).....................................................................25

*Ellison v. American Bd. of Orthopaedic Surgery*,
  11 F. 4th 200 (3d Cir. 2021) ........................................................................ 11-12

*Farkas v. Rich Coast Corp.*,
No. 1:14-CV-272, 2017 WL 10299186 (M.D. Pa. May 19, 2017) .............. 21-22

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ............................................................................10

*Fox v. U.S. Housing and Urban Dev.*,
416 F. Supp. 954 (E.D. Pa. 1976) ...................................................................24

*Garden State Standardbred Sales Co. v. Seese*,
611 A.2d 1239 (Pa. Super. Ct. 1992) ........................................................ 19-20

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*,
337 F.3d 297 (3d Cir. 2003) ......................................................................*Passim*

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) .........................................................................................12

*Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*,
No. 89-2243, 1990 WL 151795 (E.D. Pa. Oct. 4, 1990) ..................................18

*ISN Bank v. Rajaratnam*,
83 A.3d 170 (Pa. Super. Ct. 2013) .............................................................18, 31

*Jeannette Paper Co. v. Longview Fibre Co.*,
548 A.2d 319 (Pa. Super. Ct. 1988) ................................................................28

*Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*,
2017 WL 4310221 (M.D. Pa. Sept. 28, 2017) ..................................................21

*Lerner v. Lerner*,
954 A.2d 1229 (Pa. Super. Ct. 2008) ..............................................................13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .........................................................................................12

*Lynch v. Christie*,
815 F. Supp. 2d 341 (D. Maine 2011) .............................................................24

*Meese v. Keene*,
481 U.S. 465 (1987) .........................................................................................22

10296303.v2

*Mifflinburg Tel., Inc. v. Criswell*,
    277 F. Supp. 3d 750 (M.D. Pa. 2017).................................................................27

*Morphy v. Shipley*,
    41 A.2d 671 (Pa. 1945)...................................................................................12

*Naythons v. Stradley, Ronon, Stevens & Young, LLP*,
    No. 07-4489, 2008 WL 1914750 (E.D. Pa. Apr. 30, 2008) ...............................16

*Pa. Protection and Advocacy, Inc. v. Houston*,
    136 F. Supp. 2d 353 (E.D. Pa. 2001).................................................................22

*In re Phar-Mor, Inc. Securities Litigation*,
    172 F.3d 270 (3d Cir. 1999) .............................................................................10

*Pierce v. Penman*,
    515 A.2d 948 (Pa. Super. Ct. 1986)...................................................................26

*Randall Mfg., LLC v. Pier Components, LLC*,
    No. MC 3:14-346, 2017 WL 1519498 (M.D. Pa. Apr. 27, 2017)..........19, 21, 30

*Rupert v. King*,
    No. 1181 WDA 2014, 2015 WL 6675184 (Pa. Super. Ct. Aug. 21, 2015)........22

*Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*,
    150 A.3d 957 (Pa. Super. Ct. 2016)...................................................................26

*Silva v. Karlsen*,
    1997 WL 560122 (E.D. Pa. Aug. 29 1997) .......................................................21

*Stop 35, Inc. v. Haines*,
    543 A.2d 1133 (Pa. Super. Ct. 1988)...........................................................18, 31

*Thompson v. Real Estate Mortg. Network*,
    748 F.3d 142 (3d Cir. 2014) .............................................................................10

*Thurman v. Steidley*,
    Case No. 16–CV–104, 2017 WL 2435284 (D. Maine June 5, 2017) ................24

*Tungsten Heavy Powder & Parts, Inc. v. Glob. Tungsten & Powders Corp.*,
    No. 4:17-CV-01948, 2018 WL 3304550 (M.D. Pa. July 5, 2018)............... 26-29

*W. Penn Allegheny Health Sys., Inc. v. UPMC,*
   627 F.3d 85 (3d Cir. 2010) ...................................................................11

*Werner v. Plater-Zyberk,*
   799 A.2d 776 (Pa. Super. Ct. 2002)......................................................13

*Windsor Securities, Inc. v. Hartford Life Ins. Co.,*
   986 F.2d 655 (3d Cir. 1993) ...............................................................30

## STATUTES

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332 ...................................................................................1

## OTHER AUTHORITIES

Fed. R. App. P. 32(a)(7)........................................................................36

Fed. R. Civ. P. 26(d)(1).........................................................................21

Restatement (Second) of Torts § 767....................................................30

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.  This Court presently has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291.  On September 28, 2022, the district court granted the motion to dismiss filed by defendant-appellee Toby Katz ("Katz" or "Appellee") and dismissed the Amended Complaint with prejudice.  (Appx0004.)  On October 10, 2022, plaintiff-appellant Michael Grasso, individually and t/a General Partner of GF 2014, L.P. ("Michael" or "Appellant"), filed a timely notice of appeal.  (Appx0001.)[1]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the district court erred in granting Katz's motion to dismiss and dismissing the Amended Complaint with prejudice (Appx0004).  In particular:

(a)    Whether the district court erred in determining as a matter of law that Michael cannot bring an abuse of process claim against Katz for the subpoenas issued to GF 2014, L.P.'s realtor and insurance adjuster, where Michael and GF 2014, L.P. plainly were the object of the subpoenas (Appx0010-0013);

(b)    Whether the district court erred in determining as a matter of law that Michael failed to state a claim for tortious interference,

---

[1]    As in the district court, to avoid any confusion among the Grasso family members, Appellant refers to himself and his family members by their first names herein.  (Appx0005.)

where Michael alleged all elements of tortious interference and Katz's motivation for issuing the subpoenas is an issue of fact not appropriately decided on a motion to dismiss (Appx0013-0018); and

(a)    Whether the district court erred in determining as a matter of law that Michael, as General Partner of GF 2014, L.P., cannot seek a judgment declaring the Entireties Interest in GF 2014, L.P. not subject to the Joseph Judgment (Appx0018-0019).

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

There are two related cases pending in the District Court for the Eastern District of Pennsylvania (the "District Court"): *Toby Katz v. Michael Grasso et al.*, Civil Action No. 2:20-cv-06320-CMR, and *Toby Katz v. Iron Hill Co. et al.*, Civil Action No. 2:22-cv-01012-CMR. In addition, Appellant was subpoenaed in the matter *Marshall Katz v. Joseph Grasso*, Docket No. 2017-02140 in the Montgomery County Court of Common Pleas, as discussed further below. None of these cases previously have been before this Court. Appellant is not aware of any other case or proceeding that is in any way related, completed, pending or about to be presented before this Court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

### I.   RELEVANT FACTS

#### A.   The Parties

Michael is an 87 year-old adult individual and resident of Pennsylvania. (Appx0090 ¶ 9.)  GF 2014, L.P. ("GF 2014") is a Pennsylvania limited partnership that was created in 2014, with Michael as General Partner and he and his wife owning a 99% limited partnership interest as tenants by the entireties.  (Appx0005-0006; *see also* Appx0090 ¶ 8.)

Katz is an adult individual and citizen of Northbrook, Illinois.  (Appx0090 ¶ 10.)  On November 15, 2016, Katz's late husband, Marshall Katz, obtained a default judgment in the amount of $23,000,000 against Joseph Grasso (the "Joseph Judgment"), in an action captioned *Marshall J. Katz v. Joseph Grasso et al.*, No. 07-CH24116, filed in the Circuit Court of Cook County, Illinois, Chancery Division (the "Illinois Action").  (Appx0006.)  Joseph Grasso ("Joseph") is Michael's adult son.  There is no connection between Michael/GF 2014 and the Joseph Judgment other than that Michael is Joseph's 87 year-old father.  (Appx0006.)  Neither Michael nor GF 2014 were a party to the Illinois Action.  (Appx0091 ¶¶ 15-16.)

#### B.   The Entireties Interest and Execution Proceedings

On January 2, 2017, Michael and his wife gifted their interest in GF 2014 to Joseph and his wife, Donna Grasso ("Donna"), as tenants by the entireties (the "Entireties Interest").  (Appx0006; *see also* Appx0102-0105.)

3

On February 1, 2017, Katz transferred the Joseph Judgment to the Court of Common Pleas in Montgomery County, Pennsylvania, Case No. 2017-02140 (the "Execution Proceedings"). (Appx0006.) The Execution Proceedings are currently ongoing. Neither Michael nor GF 2014 is a party to the Execution Proceedings. (Appx0006.)

In the Execution Proceedings, Katz has focused her efforts primarily on assets of GF 2014, including a parcel of real property located at 649 Dodds Lane, Gladwyne, Pennsylvania (the "Dodds Lane Property"), which was owned by GF 2014. (Appx0006.) As stated above, and as Katz is fully aware, since January 2, 2017, GF 2014 has been owned 99% percent by Joseph and Donna as tenants by the entireties, and 1% by Michael as General Partner of GF 2014. In other words, Joseph's only interest in GF 2014 is a jointly held limited-partnership interest with his wife as tenants by the entireties – that is, the Entireties Interest. (Appx0091 ¶ 20.) To the extent that GF 2014 has made distributions, such have been to the Entireties Interest only, and not to Joseph individually. (Appx0092 ¶ 30.) Likewise, the Dodds Lane Property was GF 2014's asset, and not Joseph's individually. (Appx0093 ¶ 36.)

It is well-settled that a judgment creditor cannot execute on property held by tenants in the entirety where the judgment is against only one spouse, as is the case with the Joseph Judgment here. That fact, however, has not stopped Katz from

prosecuting a seemingly endless campaign against GF 2014 and Michael. Apparently unable to locate sufficient assets belonging to Joseph, Katz has resorted to tormenting Michael and interfering with Michael's family and business relationships under the guise of seeking discovery about the Entireties Interest.

Specifically, during discovery in the Execution Proceedings, GF 2014 produced its tax returns, documents relating to gifting the Entireties Interest to Joseph and Donna, and documents relating to the Dodds Lane Property and an explosion that occurred there in 2018, among other materials. (Appx0093 ¶¶ 33-36.) In addition, on November 2, 2020, Katz issued a subpoena to Michael to testify in his capacity as General Partner of GF 2014. (Appx0006; *see also* Appx0093 ¶ 33.) Michael testified for more than nine hours in a deposition spanning three days. (Appx0093 ¶ 37.) Katz questioned Michael about every real estate project with which he has been involved since the 1980's *unrelated to* GF 2014 or his role as General Partner of GF 2014, as well as decades-old criminal matters. (Appx0093 ¶ 38.)

## C.    The Katz Federal Court Action

On December 16, 2020, Katz commenced a third action, this time in the District Court for the Eastern District of Pennsylvania, captioned *Toby Katz v. Michael Grasso et al.*, Civil Action No. 2:20-cv-06320-CMR (the "Katz Action"). (Appx0007; *see also* Appx0094 ¶ 40.) In the Katz Action, Katz asserted claims for

fraudulent transfer, civil conspiracy and unjust enrichment against Joseph, Donna, and Michael, on the theory that Joseph and Donna fraudulently conveyed the Dodds Lane Property to GF 2014. (*Id*.) The parties have not yet conducted their Rule 26(f) conference, and the court has not yet held a Rule 16 conference in the Katz Action. (Appx0097 ¶ 64.)

In an effort to evade the federal rules and prematurely obtain discovery in support of her fraudulent transfer claims, Katz issued subpoenas *in the Execution Proceedings* to Michael's family and business associates seeking documents and information about GF 2014 and the Dodds Lane Property intended to support Katz's fraudulent transfer claims *in the Katz Action*. (Appx0007.) Specifically, on September 28, 2021, Katz issued a subpoena (the "Fox & Roach Subpoena") to BHH Affiliates, LLC t/a Fox & Roach ("Fox & Roach"), which is GF 2014's real estate agent for the Dodds Lane Property. (Appx0007; Appx0119-0121.) The Fox & Roach Subpoena seeks documents and information including but not limited to: (i) any brokerage agreement(s) between Joseph, Donna, and/or GF 2014, on the one hand, and Fox & Roach, on the other hand; (ii) any seller's disclosure forms for the sale of the Dodds Lane Property, and (iii) all communications between Joseph, Donna, and/or GF 2014, on the one hand, and Fox & Roach, on the other. (Appx0119-0121.)

Fox & Roach is a firm with which GF 2014 currently had a listing agreement with respect to the Dodds Lane Property, and it is a firm with which Michael and GF 2014 have a reasonable expectation of doing future business. (Appx0095 ¶ 49). Indeed, Michael has done business with two realtors for over 20 years who are currently at Fox & Roach, and he had, prior to the events giving rise to this action, every expectation of continuing to do so. (Appx0095 ¶ 49.) As a result of Katz's harassment of Fox & Roach, the firm now refuses to engage in basic communication directly with Michael and GF 2014, and the prospects of future business dealings has been significantly diminished. (Appx0095 ¶ 50.) Indeed, GF 2014's realtor has been so intimidated by Katz that, out of fear of being dragged more deeply into Katz's sham asset discovery, it determined that the consequences of withholding material information from its own client impacting a then-still pending $2 million real estate transaction were less severe than doing anything that Katz could try to pervert as part of some imagined, nonsensical conspiracy (the general theme of her pleadings in the Katz Litigation). (Appx0095 ¶ 51.)

Further, on November 4, 2021, Plaintiff served a subpoena (the "Clarke & Cohen Subpoena," and together with the Fox & Roach Subpoena, the "Subpoenas") on Clarke & Cohen ("Clarke & Cohen"), which is GF 2014's insurance adjuster engaged for an insurance loss recovery claim that GF 2014 had submitted in connection with an explosion that had occurred at the Dodds Lane Property.

(Appx0007; Appx0113-0117.)  The Clarke & Cohen Subpoena seeks documents and information concerning, among other things: (i) "preparation and support for any [] Sworn Statement in Proof of Loss filed regarding the November 4, 2018 explosion at" the Dodds Lane Property; (ii) all communications with Clarke & Cohen; and (iii) the "value of any improvements made to the buildings located at [the Dodds Lane Property] prior to the November 4, 2018 explosion."  (Appx0114-0115.)

These Subpoenas and the documents requested therein, issued *in the Execution Proceedings*, plainly are intended to obtain discovery in support of Katz's fraudulent transfer claims *in the Katz Litigation*, that the Entireties Interest and/or the corporate form of GF 2014 should be set aside so that Katz may execute upon their assets.  Katz admitted this in her motion to dismiss, where she stated that the Subpoenas were intended to uncover assets that Joseph hid by "fraudulently transferring entireties property to third parties," and to "determine if GF 2014 serves as Joseph's alter ego."  (Dkt No. 10-1.)  Katz's purported asset discovery is an end-run around the Federal Rules of Civil Procedure and the very due process considerations put in place to require fraudulent transfer claims be brought, and discovery concerning them to be conducted, in a separate action from the Execution Proceedings.

In addition to Fox & Roach and Clarke & Cohen, Katz has served subpoenas on Michael's family members.  (Appx0094.)  Further, Katz issued the Subpoenas

without informing Michael or GF 2014, even though both were named as defendants in the Katz Action, and concealed their existence for months.  (Appx0095-0096.) Katz's concealment of the Subpoenas, given their subject matter, violates the procedure set forth in the Federal Rules of Civil Procedure.

Accordingly, as set forth in the Amended Complaint, Katz is attempting to utilize the Execution Proceedings to conduct discovery for her fraudulent transfer action and to subject Michael and GF 2014 to harassment, inordinate expense, and interference with their business operations.

## II.    PROCEDURAL HISTORY

Michael commenced this action on November 15, 2021 by filing a Complaint in the Montgomery County Court of Common Pleas, alleging that Katz improperly used the Execution Proceedings to: (1) harass Michael and his family; (2) interfere with Michael's business relationships; (3) damage Michael's relationships with his children and grandchildren; and (4) prematurely conduct discovery for the Katz Action in violation of the Federal Rules of Civil Procedure.  (Appx0033-0044.)

Katz removed the action to the Eastern District of Pennsylvania on December 15, 2021. (Appx0023-0026.)  Michael filed an Amended Complaint on January 11, 2022, asserting claims against Katz for abuse of process, tortious interference with Michael's and GF 2014's business relationships, and seeking a declaratory judgment

that the Entireties Interest is not subject to execution by Katz to satisfy the Joseph Judgment. (Appx0087-0122.)

On January 25, 2022, Katz moved to dismiss under Rules 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment.  (Appx0123, Dkt. No. 10.) Michael opposed the motion. (Dkt. No. 11.)  On September 28, 2022, the district court entered an Order (the "Order") and Memorandum Opinion (the "Opinion") granting the motion to dismiss and dismissing the Amended Complaint with prejudice.  (Appx0004-0019.)[2]

On October 10, 2022, Michael filed a timely Notice of Appeal.  (Appx0001.) This appeal followed.

## III.    RULINGS PRESENTED FOR REVIEW

Michael appeals the Order entered by the District Court on September 28, 2022, granting Katz's motion to dismiss and dismissing the Amended Complaint with prejudice.  (Appx0004.)

---

[2]      The District Court declined to convert Katz's Rule 12 motion to a motion for summary judgment under Rule 56, and in reaching its decision, did not consider the materials Katz had submitted with her motion.  (Appx0009.)

## SUMMARY OF ARGUMENT

The District Court erred in dismissing the Amended Complaint with prejudice.

With respect to Count I, asserting a claim for abuse of process against Katz, Michael contends that under the standard articulated by the Pennsylvania Superior Court in *Cruz* and subsequently applied in *Allied Medical Associates* and *Naythons*, the Subpoenas constitute legal process used against him.  It is black-letter law that the Entireties Interest cannot be executed upon to satisfy the Joseph Judgment, and so apparently lacking assets of Joseph on which to execute, Katz instead used the Subpoenas – issued under the guise of executing on the Joseph Judgment in the Execution Proceedings – for the following improper purposes:  (i) extort or coerce Michael and/or GF 2014 into paying the Joseph Judgment; (ii) to harass and harm Michael and GF 2014, and their business associates; and (iii) to obtain premature discovery on her fraudulent transfer claims in the Katz Action.  As a result of Katz's wrongful conduct, Michael and GF 2014 have sustained financial and non-financial injuries, including harm to their reputation and relationships with two business associates – Fox & Roach, a real estate brokerage, and Clarke & Cohen, an insurance adjuster.  Both of these third parties were involved with transactions related to the Dodds Lane Property owned by GF 2014, and Katz directed the baseless Subpoenas to them *for the specific purpose of damaging Michael's and GF 2014's reputations*

*and interfering with the transactions.* To the extent that Katz disputes the allegations concerning her reasons or motives for issuing the Subpoenas, these are issues of fact that the District Court should not have resolved on a Rule 12 motion to dismiss.

With respect to Count II, tortious interference, Michael contends that (i) GF 2014 has an executed listing agreement with Fox & Roach to sell the Dodds Lane Property; (ii) Clarke & Cohen is the insurance adjuster engaged to evaluate damages resulting from a fire that occurred at the Dodds Lane Property in 2018; and (iii) Michael, separate from GF 2014, has a 20-year, ongoing business referral relationship with Fox & Roach. The Subpoenas damaged and interfered with Michael's and GF 2014's business relationships with Fox & Roach and Clarke & Cohen; most notably, as a result of the Subpoenas, Fox & Roach has refused to engage in direct communications with Michael or GF 2014, despite the then-pending sale of the Dodds Lane Property, not only interfering with the deal but also disrupting the prospect of future business dealings with them.

To the extent that Katz disputes the allegations concerning her reasons or motives for issuing the Subpoenas, these are issues of fact that the District Court should not have resolved on a Rule 12 motion. Similarly, the District Court's finding that Fox & Roach was not "intimidated" by Katz is an issue of fact; given the allegations concerning Katz's ulterior motives, whether Katz was "justified" in her

10296303.v2

actions is an issue of fact on which Appellant should be permitted to take discovery, and which the District Court should not have resolved on a motion to dismiss.

In Count III, Michael, as General Partner of GF 2014, seeks a declaratory judgment that the Entireties Interest is not subject to execution by Katz to satisfy the Joseph Judgment, which is against Joseph Grasso only. Michael, as General Partner of GF 2014, has every interest in protecting GF 2014's partnership interests from execution by a creditor of one of that interest's two joint owners, in accordance with Pennsylvania law. Michael also has every interest in obtaining a declaration that Katz cannot execute on the Entireties Interest, as such would put a stop to Katz's bombardment of Michael, GF 2014, and their business associates with improper discovery. In short, Michael seeks a declaratory judgment not to vindicate Joseph's and Donna's rights, but rather to protect his own and those of GF 2014.

Accordingly, for the reasons set forth below, this Court should vacate the Order dismissing the Amended Complaint, direct Katz to answer the Amended Complaint, and remand the case to the District Court for further proceedings.

## **ARGUMENT**

### I. STANDARD OF REVIEW

The District Court's dismissal for failure to state a claim pursuant to Rule 12(b)(6) is subject to *de novo* review. *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206

(3d Cir. 2009). Likewise, the courts of appeal review *de novo* a district court's jurisdictional determinations. *In re Phar-Mor, Inc. Securities Litigation*, 172 F.3d 270, 273 (3d Cir. 1999).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

As the District Court aptly stated in its Memorandum Opinion, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." (Appx0008-0009 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).) The question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." (Appx0009 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)); *see also Fowler,* 578 F.3d at 213 (a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element")).) The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief." (Appx0009 (quoting *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).) Further, in evaluating a motion to dismiss under Rule 12(b), the court "must only consider allegations in the complaint, matters of public record, and exhibits attached to the complaint." (Appx0009

(quoting *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)); *see also W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) (district court "may not consider matters extraneous to the pleadings" in ruling on a motion to dismiss).)[3]

## B.    Article III Standing

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ellison v. American Bd. of Orthopaedic Surgery*, 11 F. 4th 200, 205 (3d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  To constitute an injury in fact, a plaintiff "must seek a remedy for a personal and tangible harm." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  Such injury "must be 'concrete and particularized,' as well as 'actual or imminent.'" *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (internal citations removed).  The party asserting standing has the burden of establishing these elements.  *Ellison,* 11 F. 4th at 205; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

---

[3]    Katz attached 24 documents as exhibits to her motion to dismiss and argued that to consider them, the Court should convert the motion to one for summary judgment. (*See* Dkt. Nos. 10-4 to 10-26.)  The District Court, however, declined to do so, and it did not consider Katz's exhibits in evaluating the motion to dismiss.  (*See* Appx0009 ("Katz submitted multiple exhibits that are neither matters of public record nor exhibits attached to the Amended Complaint.  The Court cannot consider these exhibits for the purposes of the motion to dismiss.").)  Such exhibits are therefore not included in the accompanying Appendix.

10296303.v2

### III.   THE DISTRICT COURT ERRED IN DISMISSING THE ABUSE OF PROCESS CLAIM.

The "gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (quoting *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987); *see also Morphy v. Shipley*, 41 A.2d 671, 674 (Pa. 1945) ("An abuse is ... a perversion of [legal process].")  A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed." *Gen. Refractories*, 337 F.3d at 304 (quoting *Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.,* 154 A.2d 585, 587 (Pa. 1959)).  "Generally speaking, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff." *Id.*; *see also Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002).  To assert a claim for abuse of process, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.*; *see also Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008).

In its Memorandum Opinion, the District Court dismissed Michael's abuse of process claim (Count I) with prejudice, finding that "it cannot be said that Michael and GF 2014 were undeniably the 'legal object' of Katz's subpoenas in furtherance

16

of discovery in the Execution Proceedings." (Appx0013.)  The District Court, however, failed to cite any authority supporting its finding that Michael cannot maintain an abuse of process claim based on the Subpoenas directed to third parties, especially where, as here, such third parties are his and GF 2014's business associates.  (Appx0010-0013.)  Nor has Michael been able to locate any such authority.  To the contrary, courts have consistently found that abuse of process claims may be brought by one who is a target of legal process – that is, the "legal object" of the process – even when such process was served upon a third party.  For the reasons set forth below, Michael has adequately alleged, and has standing to assert, an abuse of process claim against Katz.

### A.    Michael Adequately Alleged Legal Process Used Against Him.

In Pennsylvania, "[t]he word process as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Gen. Refractories Co.*, 337 F.3d at 310 (citing *Rosen*, 627 A.2d at 192).  It includes "discovery proceedings, the noticing of depositions and the issuing of subpoenas." *Id.*

Pennsylvania courts have found that process is "used . . . against" the plaintiff where the plaintiff was the "legal object" of the process, even if the process was served upon another person or entity. *Cruz v. Princeton Ins. Co.*, 925 A.2d 853, 857 (Pa. Super. Ct. 2007), *rev'd on other grounds*, 950 A.2d 269 (Pa. 2008).  In *Cruz*,

17

for example, the Pennsylvania Superior Court allowed parents of a minor to pursue an abuse of process claim, disagreeing with the trial court's reasoning that the parents could not pursue their abuse of process claim because the petition for appointment of guardian *ad litem* was not directed at the parents individually. *Id.* at 857. The Superior Court reasoned that the "undeniable aim" of the underlying petition "was the removal of [the parents] as guardians," and therefore the parents were the "legal object" of the process. *Id.*

Similarly, in *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, No. 08-02434, 2008 WL 4771850 (E.D. Pa. Oct. 30, 2008), the plaintiff, Allied, filed a complaint for abuse of process alleging that defendant State Farm employed discovery processes against it in "cases where Allied was not a party to (1) harass Allied, (2) cause it unnecessary expense, and (3) ultimately uncover a reason to avoid remitting reimbursement payments to Allied." *Id.* at *8.[4] Regarding the alleged third improper purpose of State Farm's discovery, Allied had alleged that State Farm was improperly using discovery in cases to which Allied was not a party to "investigate [Allied's] business practice." *Id.* Relying on the reasoning and examples set forth in *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d

---

[4]    Although a *wrongful use* of process claim may not be asserted by someone not a party to the alleged wrongfully initiated proceeding that forms the basis of such a claim (*see Rosen*, 627 A.2d 190, 193 (Pa. Super. Ct. 1993)), the same does not apply to an *abuse* of process claim. Rather, in an abuse of process claim, it is only necessary that the process in question be directed at the complainant. *See Allied*, 2008 WL 4771850 at *8.

297, 309 (3d Cir. 2003), the court denied State Farm's motion to dismiss, and instead found that the Allied had properly pled a claim for abuse of process. *Id*. at *8-*9.

*Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO*, 343 N.E.2d 278 (N.Y. 1975), is also instructive. In *Farmingdale*, a school district brought an abuse of process claim against a defendant which had subpoenaed its employee teachers allegedly to harm the district itself. *Id.* at 280. The *Farmingdale* court explained:

> [D]efendants contend that the school district cannot bring this action because the alleged abusive process was not issued against them. Although there is support for this proposition (see, generally, Restatement, Torts, § 682) we reject it. To hold that the party whom the defendants seek to injure and who has suffered economic injury lacks standing would be to defy reality. Accordingly, the tort of abuse of process will be available to nonrecipients of process provided they are the target and victim of the perversion of that process.

*Id.* at 284.

The Pennsylvania Superior Court's later decision in *Cruz*, upheld by the Pennsylvania Supreme Court on this point, indicates that the same principle applies in Pennsylvania. *See also Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489, 2008 WL 1914750, at *4 (E.D. Pa. Apr. 30, 2008), *aff'd sub nom.* 339 F. App'x 165 (3d Cir. 2009) (acknowledging that *Cruz* stands for the proposition that where the complaining individual is the "legal object" of the process at issue, such individuals to proceed with abuse of process claims).

In the Amended Complaint, Michael alleged that the Subpoenas issued to his and GF 2014's business contacts (*i.e.*, Fox & Roach and Clarke & Cohen) and family members constitute process of which Michael is the legal object.  Michael alleged that the Subpoenas were intended to harass and target him and his family, and to disrupt his business dealings.  (Appx0095 ¶¶ 49-53.)  Specifically, Michael alleged that the Subpoenas were intended to interfere with GF 2014's sale of the Dodds Lane Property, and to cause personal and financial harm to himself and GF 2014.  (Appx0095 ¶ 52 ("It is believed and therefore averred that Katz is deliberately attempting to interfere with the Dodds Lane Transaction so that she can use the threat of the transaction falling apart to extract settlement payments from anyone other than its actual judgment debtor, Joseph."); Appx0095 ¶ 53 ("GF 2014 is essentially a real estate holding company.  Harassing real estate agents and other industry players poisons the well for GF 2014 to conduct its regular operations of buying and selling real estate. Word spreads quickly among the real estate agent community, which is . . . tightly networked. Even one withdrawn bid or missed deal can be very costly.").)  These allegations raise at least a "reasonable expectation that discovery will reveal evidence of the necessary element," and thus adequately allege the first element of a claim for abuse of process.

Katz, in her brief filed with the District Court in support of her motion to dismiss, failed to point to a single case supporting her position that Michael could

not as a matter of law be the "legal object" of the Subpoenas simply because the Subpoenas were addressed to third parties.  (Dkt. No. 10-1.)  Michael, in contrast, discussed both *Cruz* and *Allied Med. Assocs.* at length in its opposition brief.  (Dkt. No. 11.)  In its Memorandum Opinion, the District Court adopted Katz's position but – like Katz herself – failed to cite any authority supporting its holding. (Appx0010-0013.)  Instead, the District Court simply distinguished *Cruz* and *Allied Med. Assocs.* on their facts.  (Appx0011-0012.)  While neither of those cases have a fact pattern identical to the unique and seemingly incredible events that have unfolded between Michael and Katz, the District Court failed to identify any differences that *as a matter of law* prevent Michael from being deemed the target or "object" of the Subpoenas.

## B.    Michael Adequately Alleged That Such Process was Used for an Improper Purpose.

An abuse of process occurs when a party uses of civil process to extort, blackmail or coerce collateral action. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 192 (Pa. Super. Ct. 1994).  An abuse of process claim is available where extortion-like threats are made or in other circumstances, "so long as intentional abuse of the legal system can be proved." *Gen. Refractories*, 337 F.3d at 304-05 (*citing Werner*, 799 A.2d at 785).  In other words, "[w]here the legal process is employed to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not intended by law, a cause of action for abuse of process

can be maintained." *Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*, No. 89-2243, 1990 WL 151795, *2 (E.D. Pa. Oct. 4, 1990) (internal citation omitted).

Michael plainly has pled that Katz is using the discovery-in-aid-of-execution process – that is, the Subpoenas – not to locate Joseph's assets on which she may execute, but for the following improper purposes:  (i) extort or coerce Michael and/or GF 2014 into paying the Joseph Judgment on his son's behalf; (ii) to harass and harm Michael and/or GF 2014, and their business associates; and (iii) to obtain premature discovery on her fraudulent transfer claims in the Katz Action.  (Appx0094 ¶ 41; *see also* Appx0094 ¶¶ 42-66.)   As alleged in the Amended Complaint, Katz has subjected Michael's and GF 2014's business partners to interminable discovery and motion practice under the guise of seeking information about an already-identified asset (*i.e.*, the Entireties Interest), which itself is not properly the subject of execution proceedings as it cannot be used to satisfy Katz's judgment solely against Joseph under Pennsylvania law.  (Appx0021 ¶ 21; Appx0097 ¶ 66.)[5]  Indeed, Katz has made

---

[5]    It is a "settled principle a husband and wife do not own separate interests in entireties property which can be reached by their individual creditors." *Stop 35, Inc. v. Haines*, 543 A.2d 1133 (Pa. Super. Ct. 1988).  Thus, "if only one spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale." *ISN Bank v. Rajaratnam*, 83 A.3d 170, 174 (Pa. Super. Ct. 2013); *see also Matter of Bundy*, 53 B.R. 582, 585-86 (W.D. Pa. Bankr. 1985) (holding bankruptcy court had no jurisdiction over entireties property where only one spouse was party to bankruptcy proceeding, and creditors therefore could not reach entireties property).  Hence, Katz cannot execute on the Entireties Interest because the judgment debtor and his wife own it as tenants by the entireties.

no effort to levy the Entireties Interest; rather, as alleged in the Amended Complaint, she is simply using such possibility as a not-so-thinly veiled justification for pressuring Michael and GF 2014 to pay Joseph's judgment by any means necessary. Discovery in aid of execution is not designed for this purpose.

Further, Pennsylvania's judgment execution rules "allow[] a judgment creditor to obtain information necessary to *locate* any assets of the judgment debtor." *Randall Mfg., LLC v. Pier Components, LLC*, No. MC 3:14-346, 2017 WL 1519498, *1 (M.D. Pa. Apr. 27, 2017). It is well established that a judgment creditor *cannot* use discovery in aid of execution "to determine whether a fraudulent conveyance by the judgment debtor occurred" or "to ascertain whether [the debtor] transferred property into an entireties account in fraud of his creditor." *Garden State Standardbred Sales Co. v. Seese*, 611 A.2d 1239, 1241 (Pa. Super. Ct. 1992). Rather, a judgment creditor must "commence a separate, equitable action" alleging fraudulent conveyance, and only then, "[o]nce such action is taken [] may it be determined whether fraudulent conveyances took place." *Id.* at 1242. As the *Garden State* court held:

> [T]he issue of rights to property in the hands of third persons sought to be executed against is properly adjudicated in proceedings in which a defendant's rights are fully protected. The procedures recommended were those in place at the time in the Sheriff's Interpleader Act, in the trial courts sitting as a courts in equity, in garnishment proceedings in which there was a right to trial by jury or in an action in ejectment. In general, the *Greater Valley* court held that the defendant's rights must

> be protected by a 'full plenary proceeding and the attendance safeguards thereof . . .'.

*Id*. (*citing Greater Valley Terminal Corp. v. Goodman,* 202 A.2d 89, 93 (Pa. 1964)).

Accordingly, the *Garden State* court found that "to afford defendants clear procedural safeguards in claims in which a fraudulent conveyance is alleged," a judgment creditor cannot use post-judgment discovery "as a substitute for the institution of an equitable action in which the conflicting rights of the parties in the contested property may be adjudicated ***prior to*** the institution of execution proceedings." *Id.* at 1242-43 (emphasis added); *Corbett v. Hunter*, 436 A.2d 1036, 1038 (Pa. Super. Ct. 1981) ("a fraudulent conveyance must initially be established prior to the right of execution being created as to such joint property").

There is no dispute that Katz already has "located" the Entireties Interest and has in her possession information about its value and finances, including the agreement of sale for the Dodds Lane Property and records of payments received on its insurance claim related to that realty. (Appx0006-0007.) Indeed, Katz admitted in her motion to dismiss that the Subpoenas were intended to obtain documents concerning purported "fraudulent transfers from Joseph to GF 2014" and to support her theory that "GF 2014 serves as Joseph's alter ego." (Dkt. No. 10-1 at 22-24.) Katz had the audacity to explicitly state that this "[t]hird-party discovery is therefore required to determine whether GF 2014's corporate façade should [be] [sic] disregard[ed] [sic]." (Dkt. No. 10-1 at 24.) Katz was required to – and in fact did –

24

file a new fraudulent conveyance action, rather than pervert the discovery in aid of execution practice. Yet, as alleged in the Amended Complaint, Katz issued the Subpoenas not in that new action, but rather in the Execution Proceedings, presumably because discovery had not commenced in the Katz Action. (Appx0097 ¶¶ 63-64; *see Randall Mfg.*, 2017 WL 1519498 at *2 (finding that discovery sought by judgment creditor was improperly issued in post-judgment execution proceedings because it was sought not to locate assets of the judgment debtor, but rather to pierce the corporate veil of the defendant").[6]

To the extent that Katz disputes the allegations concerning her reasons or motives for issuing the Subpoenas, these are issues of fact that the District Court should not have resolved on a Rule 12 motion. Indeed, an abuse of process claim "compels careful consideration of both a defendant's actions, and the defendant's motivations," because "[i]t is only the perversion of the particular legal process which gives rise to civil culpability." *Farkas v. Rich Coast Corp.*, No. 1:14-CV-272, 2017 WL 10299186, at *6 (M.D. Pa. May 19, 2017), *report and recommendation adopted*, No. 1:14-CV-272, 2017 WL 10311284 (M.D. Pa. Aug.

---

[6] "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . .except when authorized by these rules, by stipulation, or by court." Fed. R. Civ. P. 26(d)(1); *Alston v. Parker*, 363 F.3d 229, 236 n.11 (3d Cir 2004) ("Rule 26(d) provides that discovery is not to commence until a discovery conference has occurred pursuant to Rule 26(f)."). Rule 26(d)'s prohibition against premature discovery applies to discovery against non-parties. *See, e.g.*, *Silva v. Karlsen*, 1997 WL 560122, *1-2 (E.D. Pa. Aug. 29 1997); *Lakeview Pharmacy of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *10 (M.D. Pa. Sept. 28, 2017). No Rule 26(f) conference has yet occurred in the Katz Action. (Appx0097 ¶ 64.)

21, 2017).  Accordingly, "questions surrounding the competing motives and intent of the [] parties . . . present disputed material issues of fact" that should be resolved at trial. *Farkas*, 2017 WL 10299186 at *8; *see also Rupert v. King,* No. 1181 WDA 2014, 2015 WL 6675184, at *3 (Pa. Super. Ct. Aug. 21, 2015) (reversing the trial court's grant of preliminary objections to dismiss plaintiff's abuse of process claim where defendants' intent was "a question of fact that should go to a factfinder" and further discovery should have been allowed to show this improper purpose).

### C.    Grasso Has Sustained Harm Sufficient to Confer Standing and to Satisfy the Third Element of an Abuse of Process Claim.

"At the pleading stage, general factual allegations of injury resulting from defendant's conduct are sufficient to withstand a motion to dismiss based on lack of standing." *Pa. Protection and Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 361 (E.D. Pa. 2001).  Harm to professional reputation is clearly an injury that establishes standing. *Meese v. Keene*, 481 U.S. 465, 475-76 (1987); *see also Agron, Inc. v. Lin*, No. CV0305872MMM, 2004 WL 555377, at *6 (C.D. Cal. March 16, 2004) (finding that harm to "business relationships" is "a classic type of injury that parties turn to the courts to redress").  A plaintiff "is not required to present specific proof as to the actual costs it incurred because of the Defendant's actions." *Pa. Protection*, 136 F. Supp. 2d at 361-62.

Here, Michael has alleged both financial and non-financial injuries sufficient to confer Article III standing.  Michael alleged harm to his *own* reputation and

business transactions, as well as harm to GF 2014's business reputation and transactions, as a result of Katz subjecting GF 2014's business partners to interminable discovery about an asset that, in any event, is not subject to execution because it is owned in the entireties. (Appx0091-0092 ¶¶ 19-25.) Katz has poisoned GF 2014's business relationships and reputation with two specific partners – Fox & Roach, a real estate brokerage, and Clarke & Cohen, an insurance adjuster – both of which are involved with transactions related to the Dodds Lane Property owned by GF 2014. (Appx0094-0097 ¶¶ 46-61; Appx0096 ¶ 58 ("There is no legitimate reason for Katz to seek documents or depositions from Clarke and Cohen, as the intricacies of the Insurance Claim have nothing to do with finding Joseph's assets.").) Katz is directing baseless subpoenas to these firms *for the specific purpose of injuring GF 2014's and Michael's reputation and business prospects*. (Appx0095-0096 ¶¶ 49-54 (as to BHH) and ¶¶ 58-60 (Clark & Cohen); *see also* Appx0093-0094 ¶¶ 32, 41, 45.) Fox & Roach, Michael's long-time business associate and GF 2014's realtor on the Dodds Lane transaction, now refuses to speak directly to Michael even though they have a $2M sale pending. (Appx0095 ¶¶ 49-51.) Simply put, "Katz is signaling to all who would deign to do business with GF 2014 that the consequence of even the most mundane business relationships is endless subpoena practice, fishing expeditions through decades of paper and electronic documents and pointless depositions designed only to waste people's time

and money and, wherever possible, humiliate them." (Appx0097 ¶ 61.) Such injuries to Michael and GF 2014 may be quantified at a later stage in this litigation.

To be clear, the alleged harm is not *to* business associates or family members, but rather that Katz is poisoning *GF 2014's and Michael's own relationships with* those third parties through a harassment campaign and by bombarding them with unfounded accusations of fraud to impugn Michael's ethics and integrity, and to undermine GF 2014's ability to conduct business. And at the center of all of this, Katz's motivation is to either take GF 2014 property or inflict so much pain that GF 2014 simply pays Joseph's judgment. These are Appellant's own injuries.

Where "relationships have been and are being damaged by defendants' allegedly unlawful conduct…that these allegations satisfied not only the constitutional limitations on standing, but also the prudential ones." *Fox v. U.S. Housing and Urban Dev.*, 416 F. Supp. 954, 956 (E.D. Pa. 1976). In fact, "this much is clear, the allegation of damage to existing relationships satisfies the Article III requirement of individualized injury." *Id*. Because Courts recognize that damage to personal relationships, like business relationships, is a legally cognizable injury, Courts have found standing where a litigant alleges harm to his or her familial relationships. *See Thurman v. Steidley*, Case No. 16–CV–104, 2017 WL 2435284, at *4 (D. Maine June 5, 2017) (recognizing standing based on harm to familial relationships); *Lynch v. Christie*, 815 F. Supp. 2d 341, 351 (D. Maine 2011) ("an

28

accusation of criminal behavior destructive of family relationships and professional standing and privileges, meets [the actual injury] standard."). Michael has alleged pecuniary harm in the form of damage to his business dealings and relationships. His non-financial harms are consequential and compensable injuries that are in addition to the alleged pecuniary harm.

For the same reasons that Michael has alleged injuries sufficient to establish Article III standing, he has pled harm that satisfies the third element of an abuse of process claim. In *Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, the court found that the plaintiff had properly pled injury where it alleged that defendant State Farm's discovery processes harassed plaintiff, delayed plaintiff from remitting certain reimbursement payments, and "allow[ed] State Farm to investigate Allied's business practices in search of a cognizable reason to avoid payment." No. 08-02434, 2008 WL 4771850, at *9 (E.D. Pa. Oct. 30, 2008) (concluding that "Allied's complaint satisfies the pleading requirement for the third element"); *see also Cruz v. Princeton Ins. Co.*, 972 A.2d 14, 19 (Pa. Super. Ct. 2009) (alleged non-financial harm sufficient to satisfy third element and proceed to trial). *Allied* and *Cruz* are consistent with the Pennsylvania Supreme Court's recent reiteration that "actual damages" encompass economic and non-economic losses, compensatory or otherwise, including for harm to reputation and mental anguish. *Bailets v. Pennsylvania Tpk. Comm'n*, 181 A.3d 324, 328-29, 332-33 (Pa. 2018); *see also*

*Pierce v. Penman*, 515 A.2d 948, 953 (Pa. Super. Ct. 1986) ("While the trial court found that Appellee had not suffered any monetary loss, this does not prevent her from recovering compensatory damages since emotional distress alone may result in the recovery of such damages").  Accordingly, as in *Allied* and *Cruz*, Michael has sufficiently pled harm to satisfy the third prong of a claim for abuse of process.[7]

## IV.   THE DISTRICT COURT ERRED IN DISMISSING THE TORTIOUS INTERFERENCE CLAIM.

To establish a claim for intentional interference with contract under Pennsylvania law, a plaintiff must show: (1) an existing or prospective contract between the plaintiff and a third party; (2) a purposeful act by the defendant taken with the specific intent to harm the existing relation or prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage because of the defendant's conduct. *Tungsten Heavy Powder & Parts, Inc. v. Glob. Tungsten & Powders Corp.*, No. 4:17-CV-01948, 2018 WL 3304550, at *2 (M.D. Pa. July 5, 2018); *Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 964 n.8 (Pa. Super. Ct. 2016).  It is unnecessary to plead that an existing contractual relationship has been breached in order to show interference with a prospective contractual relationship(s).  *Tungsten*, 2018 WL 3304550 at *2.

---

[7]    In the event that this Court finds that such allegations are insufficient, the Order should still be vacated, and the case remanded to District Court to allow Michael an opportunity to re-plead. Any perceived lack of factual specificity can be cured by amendment.

In its Memorandum Opinion, the District Court found that Michael "has not identified prospective business contracts with which Katz has tortiously interfered, beyond the mere hypothetical expectation to conduct business with Fox & Roach in the future." (Appx0014.)  The District Court then "limit[ed] its discussion as to whether Michael has alleged interference with an existing relationship as to the Dodds Lane Property contract," and concluded that the "Amended Complaint fails to allege purposeful action on the part of Katz intending to harm the business relationship." (Appx0014.)  The District Court also found that "Katz's issuance of subpoenas was justified as a matter of law," and that "Michael fails to allege any damages to Michael and GF 2014's relationship with Fox & Roach." (Appx0015-0016.)  These findings were not correct, for the following reasons.

*First*, it is well established that for an alleged prospective contractual relationship to survive a motion to dismiss, a plaintiff must plead "merely a reasonable probability of a contract—that is, something less than a contractual right, but something more than a mere hope." *Tungsten*, 2018 WL 3304550 at *2 (internal quotations omitted); *Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 797 (M.D. Pa. 2017) ("a 'prospective contractual relationship' is something less than a contractual right, and requires evidentiary support sufficient to infer that it is reasonably probable that a contract would have been entered").  A previous longstanding relationship that, without outside interference, would otherwise be

31

expected to continue, is sufficient to establish the element of a prospective contractual relation. *Jeannette Paper Co. v. Longview Fibre Co.*, 548 A.2d 319, 326 (Pa. Super. Ct. 1988). In *Tungsten*, for example, the plaintiff had alleged that as the result of the defendant's unprivileged acts, current and potential customers had expressed concern about "continuing business relations." *Tungsten*, 2018 WL 3304550 at *2. The court found this sufficient to survive dismissal, noting that "a reasonable inference to make at this stage of the litigation that such customers would be deterred by [defendant's] alleged misinformation campaign." *Id*. at *3. Moreover, at the pleading stage, the amount of alleged damages "need not be a precise calculation and may be an estimate," and this estimate may be premised upon existing contracts. *Id*.

Here, the Amended Complaint alleges that (i) GF 2014 had an executed listing agreement with Fox & Roach to sell the Dodds Lane Property (Appx0094-0095 ¶ 46, 49); (ii) Clarke & Cohen is the insurance adjuster engaged to evaluate damages resulting from a fire that occurred at the Dodds Lane Property in 2018 (Appx0096 ¶ 56); and (iii) Michael, separate from GF 2014, has a 20-year, ongoing business referral relationship with Fox & Roach (Appx0094 ¶ 49.) The Subpoenas damaged and interfered with Michael's and GF 2014's business relationships with Fox & Roach and Clarke & Cohen, relationships that Michael and GF 2014 had "every expectation of continuing" prior to the Subpoenas. (Appx0095-0099 ¶¶ 49, 52, 60-

61, 75-76.)  As a result of the Subpoenas, Fox & Roach's realtors refused to engage in direct communication with Michael or GF 2014, despite the then-pending sale of the Dodds Lane Property.  (Appx0095 ¶¶ 50-51.)  This not only interfered with the transaction, but also eliminated the prospect of future business dealings with Fox & Roach (whether as brokers or as a source of deals).  (Appx0095-0099 ¶¶ 49, 50, 53, 60-61, 76.)  Thus, it is reasonable to believe that Michael's continued business relations with their realtors has been damaged by the Subpoenas, and Michael has sufficiently alleged that Katz intended to harm, and in fact did harm, Michael's and GF 2014's prospective contractual relations with its longstanding business associates.

_Second_, like the plaintiff in _Tungsten_, Michael has sufficiently alleged facts from which damages may be estimated.  As discussed above, Michael has alleged that Katz issued the Subpoenas to harm him and to gain premature discovery in support of her fraudulent transfer claims, even though Pennsylvania law prohibits her from doing exactly this.  (Appx0097 ¶¶ 65-66.)  Indeed, Katz admitted in her motion to dismiss that the Subpoenas were intended to obtain documents concerning purported "fraudulent transfers from Joseph to GF 2014" and to support her theory that "GF 2014 serves as Joseph's alter ego."  (Dkt. No. 10-1 at 22-24.)  Katz had the audacity to explicitly state that this "[t]hird-party discovery is therefore required to determine whether GF 2014's corporate façade should [be] [sic] disregard[ed] [sic]."

(Dkt. No. 10-1 at 24.) Katz was required to – and in fact did – file a new fraudulent conveyance action, rather than pervert the discovery in aid of execution practice. Yet, as alleged in the Amended Complaint, Katz issued the Subpoenas not in that new action, but rather in the Execution Proceedings, presumably because discovery cannot yet commence in the Katz Action. (Appx0097 ¶¶ 63-64; *see Randall Mfg.*, 2017 WL 1519498 at *2 (finding that discovery sought by judgment creditor was improperly issued in post-judgment execution proceedings because it was sought not to locate assets of the judgment debtor, but rather to pierce the corporate veil of the defendant").)

To the extent that Katz disputes the allegations concerning her reasons or motives for issuing the Subpoenas, these are issues of fact that the District Court should not have resolved on a Rule 12 motion.

*Third*, to determine whether an action is justified or "proper" under Pennsylvania law, courts review the following factors under Restatement (Second) of Torts § 767: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interest in protecting the freedom of the action of the actor and the contractual interests of the other; and (6) the relations between the parties. *Windsor Securities, Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 663 (3d Cir. 1993) (citation omitted).

10296303.v2

As set forth above, Michael plainly has pled that Katz is using the discovery-in-aid-of-execution process – that is, the Subpoenas – not to locate Joseph's assets on which she may execute, but for the following improper purposes: (i) extort or coerce Michael and/or GF 2014 into paying the Joseph Judgment on his son's behalf; (ii) to harass and harm Michael and/or GF 2014, and their business associates; and (iii) to obtain premature discovery on her fraudulent transfer claims in the Katz Action. (Appx0094; *see also* Appx0095-0097 ¶¶ 41-66.) Katz has subjected Michael's and GF 2014's business partners to interminable discovery and motion practice under the guise of seeking information about an already-identified asset (*i.e.*, the Entireties Interest), which itself is not properly the subject of execution proceedings as it cannot be used to satisfy Katz's judgment solely against Joseph under Pennsylvania law. (Appx0091 ¶ 21.)[8] Indeed, Katz has made no effort to levy the Entireties Interest. (Appx0019.) Rather, as alleged in the Amended Complaint, she is simply using such possibility as a not-so-thinly veiled justification for

---

[8]    It is a "settled principle a husband and wife do not own separate interests in entireties property which can be reached by their individual creditors." *Stop 35, Inc. v. Haines*, 543 A.2d 1133 (Pa. Super. Ct. 1988). Thus, "if only one spouse is a debtor, entireties property is immune from process, petition, levy, execution or sale." *ISN Bank v. Rajaratnam*, 83 A.3d 170, 174 (Pa. Super. Ct. 2013); *see also Matter of Bundy*, 53 B.R. 582, 585-86 (W.D. Pa. Bankr. 1985) (holding bankruptcy court had no jurisdiction over entireties property where only one spouse was party to bankruptcy proceeding, and creditors therefore could not reach entireties property). Hence, Katz cannot execute on the Entireties Interest because the judgment debtor and his wife own it as tenants by the entireties.

pressuring Michael and GF 2014 to pay Joseph's judgment by any means necessary. Discovery in aid of execution is not designed for this purpose.

To the extent that Katz disputes the allegations concerning her reasons or motives for issuing the Subpoenas, these are issues of fact that the District Court should not have resolved on a Rule 12 motion. Similarly, the District Court's finding that Fox & Roach was not "intimidated" by Katz is an issue of fact not appropriately resolved on a motion to dismiss. Given the pleadings concerning Katz's ulterior motives, whether Katz was "justified" in her actions is an issue of fact on which Appellant should be permitted to take discovery, and which the District Court should not have resolved on a motion to dismiss. Accordingly, the Order should be vacated and the case remanded to the District Court for further proceedings.[9]

## V.    THE DISTRICT COURT ERRED IN DISMISSING THE DECLARATORY JUDGMENT CLAIM.

In Count III of the Amended Complaint, Michael, in his capacity as General Partner of GF 2014, seeks a declaratory judgment that the Entireties Interest is not subject to execution by Katz to satisfy the Joseph Judgment, which is against Joseph Grasso only. (Appx0018, Appx0099-0100.) The District Court found that Michael "lacks standing to bring this claim" because it "implicates the interests of Joseph and Donna, who are not parties to this action." (Appx0019.) This was in error.

---

[9]    In the event that this Court finds that the pleaded allegations are insufficient, the Order should still be vacated, and the case remanded to District Court to allow Grasso an opportunity to re-plead. Any perceived lack of factual specificity can be cured by amendment.

As discussed above, Katz's contention that she may execute on the Joseph Judgment by attaching the Entireties Interest is directly contrary to Pennsylvania law, which prohibits a judgment creditor from seizing assets owned by the entirety by the judgment debtor and his spouse. Katz nonetheless continues to perpetuate this theory as her purported justification for inundating Michael, GF 2014, and their business associates with endless discovery demands. Katz's actions are causing Michael and GF 2014 actual, present harm. (*See* Section III.C above.) Michael, as General Partner of GF 2014, thus seeks a declaratory judgment not to vindicate Joseph's and Donna's rights, but to obtain a declaration that its limited partnership interests are not subject to execution by a creditor of one of that interest's two joint owners. Michael, as General Partner of GF 2014, has every interest in protecting the partnership interests in GF 2014. He also has every interest in obtaining a declaration that Katz cannot execute on the Entireties Interest, as such would put a stop to Katz's bombardment of Michael, GF 2014, and their business associates with improper discovery.

In short, the District Court's decision suggests that a company has no standing to protect itself from creditors of any of its members, shareholders or partners. This was in error and should be overturned. To the extent that Katz disputes the harm that Michael and/or GF 2014 alleges they have sustained from her actions, this is an issue of fact that should not have been resolved on a motion to dismiss, and further

supports reversal of the District Court's decision.  In the event that this Court finds the pleaded allegations insufficient, the Order should still be vacated and the case remanded to District Court to allow Michael an opportunity to re-plead.

## CONCLUSION

For all the foregoing reasons, Appellant respectfully requests the Court vacate the Order dismissing the Amended Complaint, direct Katz to answer the Amended Complaint, and remand the case to the district court for further proceedings.

Respectfully submitted,

Dated:  January 3, 2023          By:    */s/ Teri M. Sherman*
                                        Jordan M. Rand
                                        Teri M. Sherman
                                        KLEHR HARRISON HARVEY
                                        BRANZBURG LLP
                                        1835 Market Street, Suite 1400
                                        Philadelphia, PA 19103
                                        (215) 569-2700

                                        *Attorneys for Appellant*
                                        *Michael Grasso*

10296303.v2

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

Teri M. Sherman, Esquire, hereby certifies that she is a member in good

standing of the Bar of the United States Court of Appeals for the Third Circuit.


Dated:  January 3, 2023                    By:    */s/ Teri M. Sherman*
                                           Teri M. Sherman
                                           KLEHR HARRISON HARVEY
                                           BRANZBURG LLP
                                           1835 Market Street, Suite 1400
                                           Philadelphia, PA 19103
                                           (215) 569-2700

                                           *Attorneys for Appellant*
                                           *Michael Grasso*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,639 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).


Dated:  January 3, 2023          */s/ Teri M. Sherman*_____
                                 Teri M. Sherman

## <u>CERTIFICATE OF IDENTITY OF COPIES</u>

The undersigned certifies that the text of the electronic copy of the brief filed

with the Court is identical to the text of the paper copies delivered to the Court.


Dated:  January 3, 2023          */s/ Teri M. Sherman*         
                                 Teri M. Sherman

## <u>CERTIFICATE OF VIRUS CHECK</u>

The undersigned certifies that a virus check was performed on the electronic

copy of the brief using Bitdefender Endpoint Security version 7.7.2.228.


Dated:  January 3, 2023                     */s/ Teri M. Sherman*
                                            Teri M. Sherman

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

Brief of Appellant and Appendix Vols. I and II were served upon counsel for

Appellee listed below pursuant to the Appellate Rules of Civil Procedure.  This

document has also been filed electronically and thus is also available for viewing

and downloading from the ECF system.

> David Dormont, Esq.
> MONTGOMERY MCCRACKEN
> WALKER & RHOADS
> 1735 Market Street, 21st Floor,
> Philadelphia, PA 19103
> *Attorneys for Appellee*

Dated:  January 3, 2023            */s/ Teri M. Sherman*
                                   Teri M. Sherman

*Grasso v. Katz* (No. 22-2896)

**APPENDIX**

**TABLE OF CONTENTS**

| Filed Date | Description | Page No. |
|---|---|---|
| **Volume I** | | |
| 10/10/2022 | Notice of Appeal | Appx0001 |
| 9/28/2022 | Order | Appx0004 |
| 9/28/2022 | Memorandum Opinion | Appx0005 |
| **Volume II** | | |
| *Pulled* 11/28/2022 | E.D.Pa. Case No. 21-05472  Docket Entries | Appx0020 |
| 12/15/2021 | Notice of Removal with Complaint | Appx0023 |
| 1/11/2022 | Amended Complaint with Exhibits A-D and Certificate of Service | Appx0087 |
| 1/25/2022 | Defendant Toby Katz's Motion to Dismiss Amended Complaint Or, In the Alternative, for Summary Judgment, with Proposed Orders, Exhibits 1-23, and Certificate of Service | Appx0123 |
| 2/8/2022 | Plaintiff Grasso's Opposition to Motion to Dismiss – Proposed Order and Exhibit A, Declaration of Jordan M. Rand | Appx0273 |
| 2/22/2022 | Exhibit 24 to Defendant Toby Katz's Reply Brief – Transcript of Videotaped Deposition of Joseph Grasso | Appx0281 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P., | CIVIL ACTION NO. 21-5472 (CMR) |
| *Plaintiff,* |  |
| v. |  |
| TOBY KATZ, |  |
| *Defendant.* |  |

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that Plaintiff Michael Grasso, individually and t/a General Partner of GF 2014, L.P. ("Grasso" or "Plaintiff") hereby appeals to the United States Court of Appeals for the Third Circuit from the Order of this Court granting Defendant Toby Katz's Motion to Dismiss and dismissing Plaintiff's Amended Complaint with prejudice, entered in the above-captioned action on September 28, 2022.

Respectfully submitted,

Dated:  October 10, 2022

/s/ Jordan M. Rand
William A. Harvey (25344)
Jordan M. Rand (208671)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Telephone: (215) 569-2700
Fax: (215) 568-6603
wharvey@klehr.com
jrand@klehr.com

*Attorneys for Defendants Michael Grasso and Michael Grasso t/a General Partner of GF 2014, L.P.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P., | CIVIL ACTION NO. 21-5472 (CMR) |
| *Plaintiff*, | |
| v. | |
| TOBY KATZ, | |
| *Defendant*. | |

## <u>CERTIFICATE OF FILING</u>

I hereby certify that the foregoing Notice of Appeal was filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania, using the Court's electronic filing system, within the time required by <u>Federal Rule of Appellate Procedure 4</u>.


Dated: October 10, 2022                    <u>*/s/ Jordan M. Rand*</u>
                                            Jordan M. Rand

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P., <br><br> *Plaintiff*, <br><br> v. <br><br> TOBY KATZ, <br><br> *Defendant*. | CIVIL ACTION NO. 21-5472 (CMR) |

## <u>CERTIFICATE OF SERVICE</u>

I, Jordan M. Rand, hereby certify that on this 10th day of October 2022, I caused the foregoing Notice of Appeal to be filed upon all counsel of record via this Court's ECF system.

Dated:  October 10, 2022

*/s/ Jordan M. Rand*
Jordan M. Rand

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P.**<br><br>         **Plaintiff,**<br><br>    **v.**<br><br>**TOBY KATZ**<br><br>         **Defendant.** | **CIVIL ACTION NO. 21-5472** |

**<u>ORDER</u>**

**AND NOW**, this 28th day of September 2022, upon consideration of Defendant Toby Katz's Motion to Dismiss Plaintiff's Amended Complaint and any responses hereto, it is hereby ORDERED that the Motion to Dismiss [Doc. No. 10] is **GRANTED** and the Amended Complaint of Plaintiff Michael Grasso is **DISMISSED** with prejudice.

It is so **ORDERED.**

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____
**CYNTHIA M. RUFE, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MICHAEL GRASSO, individually and t/a General Partner of GF 2014, L.P.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TOBY KATZ**<br><br>**Defendant.** | **CIVIL ACTION NO. 21-5472** |

## MEMORANDUM OPINION

**Rufe, J.**                                                           **September 28, 2022**

Michael Grasso, individually and trading as General Partner of GF 2014, L.P., filed suit against Toby Katz, alleging that Katz has been harassing Michael[1] and GF 2014 and interfering with their business relationships, as well as Michael's relationships with his family, under the guise of trying to execute a default judgment in a separate proceeding against Michael's son, Joseph Grasso. Katz has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing under Article III of the United States Constitution and under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment. For the reasons stated herein, Katz's Motion to Dismiss will be granted.

### I.   BACKGROUND[2]

The parties in this case have a long and complex history. The Court will briefly summarize the factual allegations that are relevant to this motion. GF 2014 was created in 2014,

---

[1] For clarity, Michael Grasso and his family members are referred to by their first names.

[2] The factual allegations in Michael's Amended Complaint [Doc. No. 6] are assumed true for purposes of evaluating the Motion to Dismiss.

1

with Michael as General Partner and he and his wife owning a 99% limited partnership interest as tenants by the entireties.[3] On November 15, 2016, Marshall Katz obtained a judgment against Michael's son, Joseph, in Illinois state court in the amount of $23 million (the "Illinois Judgment").[4] On January 2, 2017, Michael and his wife gifted their interest in GF 2014 to Joseph and his wife, Donna Grasso, as tenants by the entireties (the "Entireties Interest").[5] On February 1, 2017, Katz transferred the Illinois Judgment against Joseph to the Montgomery County, Pennsylvania, Court of Common Pleas (the "Execution Proceedings").[6] Neither Michael nor GF 2014 is a party to the Execution Proceedings.[7]

On November 2, 2020, as part of discovery in the Execution Proceedings, Katz issued a subpoena to Michael to attend and testify in his capacity as General Partner of GF 2014.[8] GF 2014 produced all tax returns it has filed since 2016, all documents relating to gifting the Entireties Interest to Joseph and Donna, documents relating to GF 2014's property at 649 Dodds Lane, Gladwyne, Pennsylvania (the "Dodds Lane Property"), and documents relating to an explosion that leveled the Dodds Lane Property in 2018, among other materials.[9]

---

[3] Am. Compl. [Doc. No. 6] ¶ 13.

[4] Am. Compl. [Doc. No. 6] ¶¶ 4,14. *See Marshall J. Katz v. Joseph Grasso et al*., No. 07-CH-24116 (Cir. Ct. Cook Cnty., Ill., Ch. Div.).

[5] Am. Compl. [Doc. No. 6] ¶ 26.

[6] Am. Compl. [Doc. No. 6] ¶ 17. *See Katz v. Grasso*, No. 2017-02140 (Mont. C.C.P. filed Feb. 1, 2017).

[7] Am. Compl. [Doc. No. 6] ¶ 18.

[8] Am. Compl. [Doc. No. 6] ¶ 33; *see also* Ex. B.

[9] Am. Compl. [Doc. No. 6] ¶ 36.

Appx0006

On December 16, 2020, Katz filed suit against Michael, Joseph, and Donna, asserting claims of fraudulent transfer, civil conspiracy and unjust enrichment (the "Katz Litigation").[10] Katz continued to issue subpoenas in furtherance of discovery in the Execution Proceedings. Katz served a subpoena on BHH Affiliates, LLC t/a Fox & Roach (the "Fox & Roach Subpoena"), GF 2014's real estate agent for the Dodds Lane Property,[11] as well Clarke & Cohen (the "Clarke & Cohen Subpoena"), GF 2014's insurance adjuster engaged in a claim related to the Dodds Lane Property.[12] In addition to Fox & Roach and Clarke & Cohen, Katz has served subpoenas on Michael's family members.[13]

Michael then filed this lawsuit against Katz, alleging that Katz improperly used the Execution Proceedings to: (1) harass Michael and his family; (2) interfere with Michael's business relationships; (3) damage Michael's relationships with his children and grandchildren; and (4) prematurely conduct discovery for the Katz Litigation in violation of the Federal Rules of Civil Procedure.[14] Michael asserts claims of abuse of process,[15] tortious interference with contract and prospective business relationships,[16] and declaratory judgment.[17] Katz has moved to dismiss, or in the alternative, for summary judgment.[18]

---

[10] Am. Compl. [Doc. No. 6] ¶ 40. *See Katz v. Grasso*, No. 20-06320 (E.D. Pa. filed Dec. 16. 2020).

[11] Am. Compl. [Doc. No. 6] ¶ 46.

[12] Am. Compl. [Doc. No. 6] ¶ 56; *see also* Ex. C.

[13] Am. Compl. [Doc. No. 6] ¶ 42.

[14] Am. Compl. [Doc. No. 6] ¶ 41.

[15] Am. Compl. [Doc. No. 6] ¶¶ 69-72.

[16] Am. Compl. [Doc. No. 6] ¶¶ 75-77.

[17] Am. Compl. [Doc. No. 6] ¶¶ 78-83.

[18] Def.'s Mot. Dismiss [Doc. No. 10].

Appx0007

## II.    LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of any claim over which the district court lacks subject matter jurisdiction."[19] A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."[20] The first step in evaluating a motion under Rule 12(b)(1) is to "determine whether the movant presents a facial or factual attack."[21] A facial challenge "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."[22] A factual challenge, by contrast, "contests the truth of the jurisdictional allegations."[23] "[T]he irreducible constitutional minimum of standing consists of three elements[:]" (1) the plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision.[24] The party asserting standing has the burden of establishing these elements.[25]

For a claim to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), each claim of a complaint must contain sufficient factual matter to state a claim to

---

[19] Fed. R. Civ. P. 12(b)(1).

[20] *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

[21] *Id.* (citation omitted).

[22] *Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (internal quotation marks and citation omitted).

[23] *Id.*

[24] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (citations and quotation marks omitted).

[25] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

4

relief that is plausible on its face.[26] The question is not whether the plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."[27] The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to the relief."[28] However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"[29] The court must only consider allegations in the complaint, matters of public record, and exhibits attached to the complaint.[30]

### III.   DISCUSSION

#### A.   STANDING

Katz argues that Michael lacks Article III standing to bring claims that arise from subpoenas served on Michael's family members or entities that do business with GF 2014.[31] Specifically, Katz contends that Michael has "not suffered 'a personal and tangible harm' constituting an injury in fact under Article III," but "[r]ather, he merely seeks to avenge what he personally (and paternalistically) perceives as wrongs done to his children and adult grandchildren."[32] Katz asserts that Michael's claims as General Partner of GF 2014 fare no

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[27] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted).

[28] *Philips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008) (internal quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002)).

[29] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3rd Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)).

[30] *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). Katz submitted multiple exhibits that are neither matters of public record nor exhibits attached to the Amended Complaint. The Court cannot consider these exhibits for the purposes of the motion to dismiss.

[31] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 6.

[32] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 18.

Appx0009

better. "Michael complains about subpoenas served on Fox & Roach and Clarke & Cohen, third parties that dealt directly with Joseph, but who also do business with GF 2014," and thus, Katz argues that tort claims stemming from these subpoenas must be brought by Fox & Roach or Clarke & Cohen.[33] Katz contends that GF 2014 does not have standing simply by virtue of doing business with these companies.[34] Michael argues in response that he has alleged both financial and non-financial injuries to establish Article III standing, including harm to professional reputations, harm to business reputations and transactions, and harm to personal relationships.[35]

Katz's arguments regarding Michael's personal stake and damages conflate the threshold standing inquiry and the underlying merits analysis of Michael's claims. Therefore, the Court will consider each of Michael's claims in turn.

### B. ABUSE OF PROCESS

To claim abuse of process, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."[36] "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: 'An abuse is where the party employs it for some unlawful object, not the purpose which it intended by the law to effect…'."[37] There is no cause of action for abuse of process if the claimant, even

---

[33] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 19.

[34] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 19.

[35] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 11-12.

[36] *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008).

[37] *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted).

6

with bad intentions, merely carries out the process to its authorized conclusion.[38] As the Third

Circuit has held, "the point of liability is reached when the utilization of the procedure for the

purpose for which it was designed becomes so lacking in justification as to lose its legitimate

function as a reasonably justifiable litigation procedure."[39]

Michael contends that the subpoenas issued to business contacts and to Michael's family

members constitute legal process against Michael and that Katz used legal process in the

Execution Proceedings for improper purposes—namely, to pressure Michael or GF 2014 to pay

Joseph's judgment and to prematurely collect discovery for the Katz Litigation.[40] Katz maintains

that under Pennsylvania law, abuse of process claims can only proceed where the abuse of

process was against *the plaintiff*—here, Katz argues, Michael's claim is based on Katz's

subpoenas *to third parties*.[41]

In response, Michael cites two cases to support his argument that process may be

considered against a plaintiff if they are the "legal object" of the process.[42] Both are

distinguishable. In *Allied Medical Associates v. State Farm Mutual Auto Insurance Company*,

several of Allied's patients were plaintiffs in civil litigation arising from motor vehicle

---

[38] *Shaffer v. Stewart*, 473 A.2d 1017, 1018 (Pa. Super. Ct. 1984) (citation omitted).

[39] *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 308 (3d Cir. 2003) (internal quotation marks and citation omitted).

[40] Am. Compl. [Doc. No. 6] ¶¶ 63-66, 71-72; Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 1, 16-17. Specifically, Michael alleges that Katz attempts to "end-run around the Federal Rules of Civil Procedure" by conducting discovery in the Execution Proceedings meant for the Katz Litigation. Am. Compl. [Doc. No. 6] ¶¶ 63-64. Michael argues that discovery is not permitted in the Katz Litigation because a Rule 26(f) or Rule 16 conference has not yet taken place. *Id.*; Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc No. 11] at 16.

[41] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 20.

[42] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 17-18.

accidents.[43] State Farm, the insurer of the defendants in those actions, appointed counsel for its

insured.[44] Allied argued that State Farm, through appointed counsel, issued subpoenas and took

depositions in these cases "to investigate and harass Allied and to drive it out of business."[45]

Although Allied was not a party to the underlying civil litigation, the court found legal process

where State Farm used discovery procedures to seek information *from Allied*.[46] Here, however,

Michael alleges that the injuries arise from subpoenas sent to individuals and entities other than

Michael or GF 2014—specifically, subpoenas sent to Michael's family members and Fox &

Roach and Clarke & Cohen.

Michael's reliance on *Cruz v. Princeton Insurance Company* is similarly misplaced.[47] In

*Cruz*, the Superior Court of Pennsylvania allowed parents of a minor to pursue an abuse of

process claim, disagreeing with the trial court's reasoning that the parents could not pursue a

claim because the petition for appointment of guardian *ad litem* was not directed at the parents

individually.[48] The Superior Court reasoned that the "undeniable aim" of the underlying petition

"was the removal of [the parents] as guardians."[49] Moreover, the petition was captioned against

the parents "as parents and natural guardians of [the child]" and against the parents *in their own*

---

[43] No. 08-2434, 2008 WL 4771850, at *7 (E.D. Pa. Oct. 30, 2008).

[44] *Id.*

[45] *Id.*

[46] *Id.* at *8.

[47] 925 A.2d 853 (Pa. Super. Ct. 2007), *rev'd*, 950 A.2d 269 (Pa. 2008).

[48] *Id.* at 857.

[49] *Id.*

8

*right.*[50] By contrast, it cannot be said that Michael and GF 2014 were undeniably the "legal object" of Katz's subpoenas in furtherance of discovery in the Execution Proceedings.

Thus, Michael has not established standing with respect to the abuse of process claim, and accordingly, Count I will be dismissed.

### C. TORTIOUS INTERFERENCE

Under Pennsylvania law, a claim for tortious interference with existing contract or prospective contractual relations requires: (1) the existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) the occasioning of actual legal damage as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.[51]

Michael alleges that Katz intentionally interfered with current and future contractual relationships with two firms: Fox & Roach, the real estate agency engaged with the sale of the Dodds Lane Property, and Clarke & Cohen, GF 2014's insurance adjuster engaged for claims related to the explosion at that property.[52] Katz argues that Michael has not alleged that Fox &

---

[50] *Id.*

[51] *Acumed LLC v. Advanced Surgical Serv.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).

[52] Am. Compl. [Doc. No. 6] ¶¶ 73-77. While the Motion to Dismiss briefing focuses on Michael and GF 2014's business relationships with Fox & Roach, Michael also alleges that Katz has interfered with Michael and GF 2014's business relationships with Clarke & Cohen. *See* Am. Compl. [Doc. No. 6] ¶ 76 ("Katz has also interfered with Michael's and GF 2014's relationships with firms with which it does business and with which it reasonably expected to continue to do business, such as, for example, its realtors and *insurance adjusters*.") (emphasis added); *see also id.* at ¶ 55 ("Katz has similarly interfered with Michael and GF 2014's relationship with their insurance

Roach declined to assist with the sale of the Dodds Lane Property because of the subpoenas, has failed to identify the specific contract Katz has interfered with, and has not alleged how the subpoenas could have caused any actual monetary damages, reputational damage, and emotional damage.[53]

Michael is first required to identify a contractual relationship. Here, Michael has alleged a contractual relationship with Fox & Roach in the form of GF 2014's listing agreement with Fox & Roach for the sale of the Dodds Lane Property.[54] However, even considering the allegations of Michael and GF 2014's long history with two realtors at the firm,[55] and GF 2014's role as a real estate holding company,[56] Michael has not identified prospective business contracts with which Katz has tortiously interfered, beyond the mere hypothetical expectation to conduct business with Fox & Roach in the future. Thus, the Court will limit its discussion as to whether Michael has alleged interference with an existing relationship as to the Dodds Lane Property contract.

The Amended Complaint fails to allege purposeful action on the part of Katz intending to harm the business relationship. Michael asserts, without supporting allegations, that Katz's goal is to interfere with the Dodds Lane Property transaction so that she can use the threat of a failing

---

adjusters."). Thus, the Court will consider Michael and GF 2014's alleged relationships with both Fox & Roach and Clarke & Cohen.

[53] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 29. Katz avers that Michael cannot personally assert a tortious interference claim because Joseph executed the contract with Fox & Roach, attaching the exclusive listing contract as Exhibit 7. However, for the purposes of evaluating the Motion to Dismiss, this Court cannot consider non-public exhibits outside of the Amended Complaint.

[54] Am. Compl. [Doc. No. 6] ¶ 49.

[55] Am. Compl. [Doc. No. 6] ¶ 49.

[56] Am. Compl. [Doc. No. 6] ¶ 53.

10

Appx0014

transaction to extract settlement payments.[57] Michael asks this Court to infer that Katz, by issuing subpoenas to a third party as part of the discovery process in the Execution Proceedings, is in fact trying to bully Michael and GF 2014 to pay the Illinois Judgment. If, as Michael describes it, Katz views Michael or GF 2014 as a "potential source of payment" for the Illinois Judgment,[58] there is also a reasonable inference that Katz does not have any incentive to "maliciously" interfere with Michael's current and future business dealings.

Second, the Amended Complaint must demonstrate that Katz's actions were not privileged or justified. In determining whether an action is "proper" under Pennsylvania law, courts review the following factors under Restatement (Second) of Torts Section 767: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interest in protecting the freedom of the action of the actor and the contractual interests of the other; and (6) the relations between the parties.[59] Here, Katz issued subpoenas under Pennsylvania Rule of Civil Procedure 3117 in the execution of the Illinois Judgment against Joseph. Indeed, Michael does not argue that the subpoenas were not valid—instead, he argues that the subpoenas are a tactic to coerce Michael and/or GF 2014 to pay Joseph's judgment. It is an important function of the litigation process that a party must be able to issue subpoenas in the pursuit of discovery. Thus, Katz's issuance of subpoenas was justified as a matter of law.

---

[57] Am. Compl. [Doc. No. 6] ¶ 52.

[58] Pl.'s Mem. L. Opp.'n Mot. Dismiss [Doc. No. 11] at 7.

[59] *Windsor Securities, Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 663 (3rd Cir. 1993) (citation omitted).

Appx0015

Finally, Michael fails to allege any damages to Michael and GF 2014's relationship with Fox & Roach. Michael alleges that "the firm now refuses to engage in basic communication directly with Michael and GF 2014, and the prospects of doing future business dealings has been diminished" and that "GF 2014's realtor has been so intimidated by Katz that, out of fear of being dragged more deeply into Katz's sham asset discovery, it determined that the consequences of withholding material information from its own client impacting a still pending $2 million real estate transaction were *less* severe than doing anything that Katz could try to pervert as part of some imagined, nonsensical conspiracy[.]"[60] However, Michael does not allege any facts in support of these allegations. Viewing the Amended Complaint in the light most favorable to the plaintiff, Michael does not raise an inference that Fox & Roach's alleged refusal to communicate with them is a result of Katz's subpoena, nor does he support his assertion that Fox & Roach is actually "intimidated" by Katz. Further, Michael concedes that the sale of the Dodds Lane Property was "still pending"[61] when he filed suit, meaning that the contractual relationship with Fox & Roach had not been terminated.

Michael relies heavily on the decision from the United States District Court for the Middle District of Pennsylvania in *Tungsten Heavy Powder and Parts, Inc. v. Global Tungsten & Powders Corp.*[62] However, *Tungsten* is distinguishable. The plaintiff in *Tungsten* alleged that current and prospective customers actually inquired about the defendant's claims and misrepresentations and expressed concerns about entering into contracts and continuing business

---

[60] Am. Compl. [Doc. No. 6] ¶¶ 50-51.

[61] Am. Compl. [Doc. No. 6] ¶ 51.

[62] No. 17-1948, 2018 WL 3304550, at *3 (M.D. Pa. July 5, 2018).

Appx0016

relationships with the plaintiff.[63] Further, the plaintiff in *Tungsten* alleged that it lost prospective and current customers including the loss of contracts worth 20 and 6 million dollars per year, respectively, as a result of the defendant's purposeful actions and interference with prospective contractual relations.[64] Thus, the *Tungsten* court determined that the damages allegations went "beyond mere reputational harm."[65] Here, by contrast, Michael and GF 2014 have not alleged that Fox & Roach expressed concrete concerns about their reputation, thus costing them business.

Michael's allegations regarding the Clarke & Cohen subpoena also fail. Michael asserts that Katz has "no legitimate reason" to seek discovery from Clarke & Cohen, and that Katz's sole purpose is to damage the firm's relationship with Michael.[66] However, Michael does not identify an existing contract with Clarke & Cohen, nor does he identify potential future contracts with Clarke & Cohen that have been soured by the Clarke & Cohen Subpoena.[67] Moreover, Michael does not plead any allegations supporting the notion that Michael and GF 2014's relationship with Clarke & Cohen is damaged, beyond merely asserting that the subpoenas have "directly damage[d] Michael's and GF 2014's relationship with Fox & Roach and Clarke and Cohen" and that Katz "intends for those firms to damage Michael's and/or GF 2014's reputation more generally in the business community by sharing with others the severe consequences that

---

[63] *Id.* at *2.

[64] *Id.* at *3.

[65] *Id.*

[66] Am. Compl. [Doc. No. 6] ¶¶ 58-59.

[67] The Amended Complaint describes Clarke & Cohen as "GF 2014's Insurance adjuster engaged for a claim related to an explosion at the Dodds Lane Property." Am. Compl. [Doc. No. 6] ¶ 56. It is not clear from the Amended Complaint whether this is an existing contract with which Katz has tortiously interfered.

Appx0017

they have endured as apparent punishment for doing business with them."[68] These conclusory allegations are insufficient. Therefore, Count II must be dismissed.

### D. DECLARATORY JUDGMENT

A declaratory judgment may be issued only where the constitutional standing requirements of a justiciable controversy are satisfied.[69] "[B]ecause the Constitution prohibits federal courts from deciding issues in which there is no 'case[ ]' or 'controversy,' declaratory judgments can be issued only where there is an 'actual controversy[.]' The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties."[70] The Third Circuit applies a three-part test that considers the adversity of interest of the parties, the conclusiveness of any judgment, and the practicality or help of that judgment.[71]

Michael seeks a judgment declaring that the Entireties Interest is not subject to the Illinois Judgment against Joseph Grasso only.[72] Michael asserts that because Joseph *and* Donna both own the Entireties Interest, it is not subject to execution by Katz—the Illinois Judgment is solely against Joseph.[73] Michael further argues that if the Entireties Interest is not subject to the Illinois Judgment against Joseph, "then there is no legitimate reason to continue to harass Michael, GF 2014, any person or company that does business with either and/or every member

---

[68] Am. Compl. [Doc. No. 6] ¶ 60.

[69] *St. Thomas–St. John Hotel & Tourism Assoc., Inc. v. Gov't of United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000).

[70] *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

[71] *Id.* (citations omitted).

[72] Am. Compl. [Doc. No. 6] ¶ 78.

[73] Am. Compl. [Doc. No. 6] ¶¶ 21, 81-82.

of Michael's family."[74] Katz argues that Michael lacks standing, and that the claim is unripe and

improperly seeks an advisory opinion.[75] The Court agrees that Michael lacks standing to bring

this claim. While the Entireties Interest includes a limited partnership interest in GF 2014, that

interest is owned by Joseph and Donna, as tenants by the entireties.[76] Thus, Michael's request for

declaratory judgment implicates the interests of Joseph and Donna, who are not parties to this

action. Further, Michael concedes that neither Michael nor GF 2014 is a party to the Execution

Proceedings,[77] and as Katz points out, the Amended Complaint does not allege that Katz has

attempted to execute the Entireties Interest.[78] Therefore, there is no "substantial controversy"

before this Court that would permit the Court to issue a declaratory judgment. Indeed, it would

be improper for the Court to do so.

IV.    CONCLUSION

    For the reasons stated above, Katz's Motion to Dismiss will be granted and the Amended

Complaint dismissed with prejudice.[79] An order will be entered.

---

[74] Am. Compl. [Doc. No. 6] ¶ 83.

[75] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 31-32.

[76] Am. Compl. [Doc. No. 6] ¶ 20.

[77] Am. Compl. [Doc. No. 6] ¶ 18.

[78] Def.'s Mem. L. Mot. Dismiss [Doc. No. 10-1] at 32.

[79] Michael is not given leave to amend the complaint because doing so would be futile. In considering whether to grant leave to amend, the Court may deny leave where amendment would be futile. *See Neff v. Unum Provident Corp.*, No. 14-6696, 2015 WL 5036390, at *7 (E.D. Pa. Aug. 19, 2015).

Appx0019